IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NAZIM AKHMEDOV,

  *Plaintiff*,

v.

STATE OF MARYLAND
DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONAL
SERVICES,

  *Defendant*.

Civil No. ELH-15-00226

## MEMORANDUM

Plaintiff Nazim Akhmedov, who is self-represented, filed suit against the Maryland Department of Public Safety and Correctional Services (the "Department" or "DPSCS"), defendant, under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.* ECF 1. Akhmedov complains that he was not selected for the position of Correctional Officer I by the Department, due to discrimination with respect to his national origin. In support of his claim, plaintiff appended several exhibits to his suit. *See* ECF 1-1 to ECF 1-4.

The Department has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or, in the alternative, it seeks summary judgment under Rule 56. ECF 9 ("Motion"). The Motion is supported by a memorandum ("Memo," ECF 9-1) (collectively, the "Motion"). Under Rule 12(b)(1), the Department asserts that this Court lacks subject matter jurisdiction because plaintiff failed to file a verified charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and thus failed to exhaust his administrative remedies. ECF

9-1 at 2. The Department also maintains that, under Rule 12(b)(6), dismissal is appropriate because plaintiff has failed to state a claim upon which relief can be granted. *Id.* Alternatively, the Department states that, "should the Court find that Plaintiff has stated a *prima facie* case of discrimination, judgment should be entered in favor of the Department because the undisputed facts establish that the reason Plaintiff was not selected for the position was because he failed to fully disclose his previous employment history, and not because of his national origin." ECF 9-1 at 2. The Motion is supported by the Affidavit of Paula Green-Holt, Deputy Executive Director of the Equal Employment Opportunity ("EEO") Division of DPSCS (ECF 9-2), and exhibits appended to her Affidavit.

Plaintiff filed a response in opposition to the Motion (ECF 12, "Opposition"), along with additional exhibits. The Department did not reply, and the time to do so has expired.

No hearing is needed to resolve the Motion. Local Rule 105.6. For the reasons stated below, I shall deny the Motion, without prejudice.

## I. Factual Summary

Plaintiff was born in Uzbekistan in 1972,[1] immigrated to the United States in 2004, and later became a United States citizen. *See* ECF 1-1 at 6 (plaintiff's statement to the EEOC); ECF 12-2 (plaintiff's statement to DPSCS dated July 9, 2014). He applied for the position of Correctional Officer with the Department and was interviewed by Security Officer Johnson on

---

[1] In 1972, Uzbekistan was part of the Union of Soviet Socialist Republics (also referred to as the U.S.S.R. or the Soviet Union). Russia was the largest republic in the Soviet Union, which dissolved in the early 1990's. "Russia" and "Soviet Union" were often used interchangeably, although they were not the same.

July 8, 2014, in Hagerstown, Maryland.[2]  ECF 1.  During the interview, plaintiff indicated that he "was born in Uzbekistan and moved to Russia."  *Id.* at 2.

Plaintiff was required to complete an application that contained his work history as of 18 years of age.  At the interview, plaintiff asked Johnson if he "need[ed] to enter that [he] worked part time at Sam's Club in Frederick, Maryland for little over a month."  ECF 1 at 2.  According to plaintiff, Johnson "wanted [Plaintiff] to go home write all [his] work history in Uzbekistan, Russia and United States.  I went back home and wrote everything and delivered to him next day in person on July 9, 2014."  *Id.* at 2-3.

In his Opposition, plaintiff elaborated, ECF 12 at 2:  "I asked [the interviewer] if I need to put this information [*i.e.*, about Sam's Club] into the application since this is an intermittent job that my schedule was rotating and was less than 2 months.  He gave me a form to fill out and asked me to bring back to him (Attachment 1) with detail [sic] personal information (Attachment 2)."  Plaintiff added, *id.*:  "Mr. Johnson asked me to bring this form."  Plaintiff also asserts in his Opposition that other applicants were allowed to provide additional documents as to their criminal records.  *Id.*

Plaintiff attached to his Opposition the handwritten statement he provided to the Department on July 9, 2014, in response to the interviewer's instructions the day before.  *See* ECF 12-2.  There, plaintiff recounted his foreign work history and his work history after he arrived in the United States in 2004.  *Id.*  Among other things, plaintiff stated that from June to July 2006, he worked at Sam's Club in Frederick, Maryland, but was "fired" because he was late on a few occasions.  *Id.*

---

[2] The Department identified the interviewer as Greg Johnston.  ECF 9-2 at 5.

By letter dated August 20, 2014, the Department notified plaintiff that he was not selected for the position of Correctional Officer. ECF 1-4 at 5. The letter did not provide a reason, however. *Id.* ECF 1-1 at 6. Thereafter, on September 2, 2014, plaintiff filed a complaint of discrimination with the Department's EEO Office. ECF 1-1 at 1-6.

Plaintiff attached to his suit a "Discrimination Complaint Form," which indicates that it is "For Use By the EEO Office." ECF 1-1. Plaintiff signed the document on September 2, 2014. It includes a narrative prepared by plaintiff, addressed to the "Office of Equal Opportunity," and an attachment. ECF 1-1 at 6.

In his submission to the Department's EEO office, plaintiff recounted that, during his interview in Hagerstown on July 8, 2014, he was asked where he was born, and he said: "'I was born in Uzbekistan.' At that time it was all under United Soviet Socialist Republic (USSR)." *Id.* He also indicated that he informed Mr. Johnson that he and his family moved from the "Uzbekistan Region to Russia's Krasnodar Region in June 1990." *Id.* During the interview, plaintiff stated that, after high school, he worked in Uzbekistan for six months for a soft beverage company. ECF 1-1 at 6. In addition, he worked as a butcher in Russia for the family business, along with his brothers, and he provided contact information. However, no references were contacted. *Id.*; *see also* ECF 12-2.

Plaintiff also recounted that, during the interview, he was asked many questions, including whether he has any tattoos, the place of his birth, and where he had worked. In addition, he was repeatedly asked whether he had used any illegal drugs. ECF 1-1 at 6. According to plaintiff, the interviewer "focused" on plaintiff's "time in Russia and Uzbekistan." *Id.* Plaintiff advised the interviewer that his "older brother works [for the Department] as CO II."

*Id.* And, he provided his brother's name and contact information, although no one contacted his brother. *Id.*

Akhmedov maintained that Mr. Johnson instructed him "to go home and write down to a piece of paper all [his] work history in Russia and Uzbekistan and US. Even if this information was in the initial form that he already has them." ECF 1-1 at 6. Accordingly, plaintiff "went home and wrote all requested information and delivered to him in person on July 9, 2014." *Id.*; *see* ECF 12-2.

Further, Akhmedov asserted that he is an "honest US Citizen with no background issues." ECF 1-1 at 6. And, he complainted that Johnson "treated [him] like a criminal" and was "too harsh and kind of rude. . . ." *Id.* He also said: "I feel that I have been discriminated due to my national origin (Russian). Even though I am Turkish native with Russian sounded [sic] last name." *Id.*

As a result of plaintiff's complaint of discrimination based on national origin, the Department's EEO Office conducted an investigation. *See* ECF 1-1 at 8. The Department submitted the "Investigative Report" as an exhibit to its Motion. It is discussed, *infra*.

By letter of October 16, 2014, the Department advised plaintiff that it had determined that plaintiff's "allegations of discrimination . . . could not be substantiated." *Id.* The letter also stated, in part: "There was sufficient information to clarify that you were disqualified from the Correctional Officer I recruitment due to an omission of a previous employment on your initial application which is a policy that is applied to all applicants' applications for open Correctional Officer positions. Based on the aforementioned, a No Probable Cause determination has been

rendered for this complaint." *Id.* Plaintiff was also advised of his rights to pursue the matter, and the ways in which to do so. *Id.*

Thereafter, on November 3, 2014, plaintiff completed an EEOC Intake Questionnaire. ECF 1-2 at 1-4. In response to a question as to his "national origin," plaintiff stated that he is "Russian." He also asserted that he "provided all required information to the agency." ECF 1-2 at 3.

On November 5, 2014, the EEOC sent the Department a "Notice of Charge of Discrimination." ECF 9-2 at 8. It contains a "RECEIVED" stamp dated November 7, 2014, *id.*, and was received by DPSCS on that date. ECF 9-2 at 3. The EEOC document states: "This is notice that a *charge* of employment discrimination has been filed against your organization. . . . ECF 9-2 at 8 (emphasis added). But, it also states, *id.*: "A perfected charge (EEOC Form 5) will be mailed to you once it has been received from the Charging Party."

By letter of December 18, 2014, the EEOC provided plaintiff with a Notice of Rights. *See* ECF 12-3 at 1. The EEOC stated, in part, *id.* (emphasis added):

> You alleged you were not hired because of your national origin (Russian.) There does not appear to be supporting information to show national origin discrimination as defined by the statute. In your correspondence, you admitted that you did not mean to hide your work history with Sam's Club, because it was a temporary position that you did not feel needed to be mentioned. You also indicated that you were also aware that the Respondent could pull up your work history by using your social security number.
>
> Based on this information, you are being issued a Dismissal and Notice of Rights which affords you the opportunity to take this matter into Federal Court. *You have the right to file a lawsuit against the employer within 90 days from the date you receive the Dismissal and Notice of Rights*. If you fail to file a lawsuit within the appropriate time frame, you will lose [the] right to pursue this matter in court.

The EEOC also stated, ECF 12-3 at 3: "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge."

In support of its Motion, DPSCS submitted the Affidavit of Paula Green-Holt, Deputy Executive Director of the Department's EEO Division. ECF 9-2 at 1. In her Affidavit, Ms. Green-Holt recounts that the EEO Division conducted an investigation of plaintiff's complaint of discrimination. *Id.* at 2. According to Green-Holt, "[t]he investigation revealed that the reason Plaintiff was disqualified was because he failed to disclose all of his prior employment in his initial interview packet. Nor did he disclose this information during his interview with the Department's Hiring Unit investigator." *Id.* at 2. She avers: "Plaintiff failed to disclose that he worked at Sam's Club in 2006 in Frederick, Maryland, a job from which he was fired." *Id.* In addition, Green-Holt asserts that plaintiff failed to disclose jobs that he held when he lived in Uzbekistan and Russia. *Id.*[3] Further, she maintains that "the Department uniformly disqualifies applicants who fail to disclose complete prior employment history in the initial interview application packet." *Id.* ¶ 4.

Green-Holt relies on the Investigative Report prepared by Paris Lee, dated September 29, 2014, which is attached as an exhibit to her Affidavit. *See* ECF 9-2 at 4-7. The Investigative Report states that an applicant to DPSCS must "list all employment . . . positions held since the applicant was 18 (eighteen) years old." ECF 9-2 at 5. Further, Lee asserts that the application

---

[3] Green-Holt also avers that plaintiff failed to disclose that he "served in the Russian military." ECF 9-2 at 2. Plaintiff addresses this assertion but, because the Department and the EEOC did not rely on this omission for their decisions, I need not address the matter at this time.

instructions indicate that the "*failure to bring **ALL** documents and completed paperwork **WILL** be considered as non-compliant. . . .*" *Id.* (Emphasis in ECF 9-2). Moreover, **"NO EXCEPTIONS WILL BE MADE."** *Id.* (Emphasis in ECF 9-2).

In addition, the Investigative Report states, ECF 9-2 at 5 (emphasis added):

According to Ms. Bonnie Ridenour, Human Resource Officer of the Respondent, Complainant did not write down all jobs held since Complainant was 18. Complainant failed to mention that he worked at a Sam's Club in 2006 in Frederick, MD and that he served in the Russian military and jobs that he held while he lived in Uzbekistan and Russia.

*Respondent stated that due to hiring policies, failure of any applicant to include their entire work history from age 18 to present is grounds for automatic disqualification from the Correctional Officer position(s).* No applicants are given a waiver or reconsideration for disqualification for failure to correctly fill out the application as this is considered falsification of application by omission. Thus Complainant was disqualified from the Correctional Officer position for failing to complete his entire application as required and as stated in his packet that he submitted.

Further, the Investigative Report provides, *id.* at 6 (emphasis added):

Ms. Holly Winchester, Manager of Centralized Hiring, and Ms. Bonnie Ridenour Human Resource Officer of Western Regional Hiring were interviewed. According to both ladies, the *Respondent has strict interview and hiring guidelines that they must adhere to.* If an applicant fails to test or forgets to include any job that is required to complete the packet, the applicant is disqualified regardless of Race or National Origin. The Interviewer asks questions that relate to the answers the applicant has stated on the background information form that is part of the packet. In this case, Complainant failed to mention a job that he was fired, or terminated from (Sam's Club). The failure of the Complainant to include this information in the packet is the reason that led to his disqualification.

A review was conducted of the application packet that was submitted by Complainant. Based on the Investigator's notes, Complainant admits during the background interview held on July 8, 2014 with the Investigator that he did not include all of his employment history since age 18 and that he was fired from one of the missing jobs. Complainant included on a separate sheet the missing employment history on July 9, 2014.

The Investigative Report indicates that, because plaintiff did not include all of his employment history on his submission on July 8, 2014, he "was disqualified from the Correction Officer position." ECF 9-2 at 6. Although plaintiff provided "the missing work history information on July 9, 2014," the Investigative Report states that "this would not help with [plaintiff's] disqualification status." ECF 9-2 at 6.

In addition, the Investigative Report indicates that Mr. Johnson, who interviewed plaintiff, "has no authority to disqualify an applicant. [An] investigator is only responsible for gathering information and reviewing to see if what was written by the applicant is correct." ECF 9-2 at 7. Therefore, his conduct was of no significance. The Department found no probable cause based on the evidence presented to support the claim of discrimination.

Notably, Green-Holt did not submit plaintiff's employment application. Moreover, neither the "policy" nor "hiring guidelines" that are central to the Investigative Report, and on which defendant relies, are appended to the Green-Holt Affidavit. Nor does it appear that Green-Holt or Lee ever personally reviewed such policies. Rather, they seem to have relied on the hearsay assertions of Ridenour and Winchester as to the existence of such policies. Further, Green-Holt has not identified any other applicants who were similarly penalized, despite the assertion that any omission on an employment application requires automatic disqualification.

In addition, Green-Holt avers that the Department "never received a perfected or verified charge of discrimination, sworn under oath by Mr. Akhmadov, from the EEOC confirming that he filed a formal charge." *Id.* at 3 ¶ 5. With this assertion, she seems to suggest that if the EEOC did not provide the Department with the charge, one must not have been filed. But, there is no affidavit from anyone at the EEOC indicating that no Charge was ever filed by plaintiff. Nor

does Green-Holt explain why the EEOC would have issued a Notice of Right to Sue to plaintiff in the absence of a Charge.

## II. Discussion

### A. Exhaustion

As noted, defendant has moved to dismiss, pursuant to F. R. Civ. P. 12(b)(1), claiming this Court lacks jurisdiction to entertain plaintiff's claim of discrimination based upon national origin because he failed to exhaust administrative remedies. ECF 9-1 at 6. In particular, DPSCS focuses on its belief that plaintiff never field a charge with the EEOC.

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). It also prohibits employers from discriminating against an employee because the employee has filed a grievance or complaint regarding an employment practice that allegedly violates Title VII's antidiscrimination provision. *See* 42 U.S.C. § 2000e-3(a). *See Boyer-Liberto v. Fontainbleau Corp.*, 786 F.3d 264 (4th Cir. 2015) (en banc).

Title VII requires a plaintiff to file a charge of discrimination with the EEOC, or an appropriate state or local agency, within a specified time "after the alleged unlawful employment practice occurred," as a prerequisite to filing suit in court. 42 U.S.C. § 2000e-5(e)(1). *See Jones v. Calvert Group, Ltd.*, 551 F. 3d 297, 300 (4th Cir. 2009); *see also*, *e.g.*, *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000). The "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

The time allotted to file a charge under Title VII depends on whether the plaintiff files the charge in a state or a local jurisdiction that has a law prohibiting employment discrimination on the same bases that are covered by the federal statutes and authorizing a state or local agency to grant or seek relief from such discrimination. Such a state or local jurisdiction is sometimes called a "deferral" jurisdiction. *See, e.g.*, *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002); *Prelich v. Med. Resources, Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2011). In a deferral jurisdiction, the period is 300 days; otherwise, the period is 180 days. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Prelich*, 813 F. Supp. 2d at 661-62. Maryland is a deferral state under Title VII; the Maryland Commission on Civil Rights is the applicable state enforcement agency. *See*, *e.g.*, *EEOC v. Randstad*, 765 F. Supp. 2d 734, 739 & n.1 (D. Md. 2011); *see also* ECF 9-2 at 1 ¶ 3.

With respect to the form of the charge, Title VII mandates that a charge be "in writing under oath or affirmation." 42 U.S.C. § 2000e–5(b); *see also* 29 C.F.R. § 1601.9 (establishing that a Title VII charge "shall be in writing and signed and shall be verified"). EEOC regulations define "verified" to mean "sworn to or affirmed before a notary public, designated representative of the [EEOC] or other person duly authorized by law ..., or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3; *see Merch. v. Prince George's Cnty., Md.*, 948 F. Supp. 2d 515, 520 (D. Md. 2013).

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as

the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).[4] "Allowing [the EEOC] first crack at these cases respects Congress's intent . . . ." *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).

Thus, Title VII's exhaustion requirement functions as a jurisdictional bar in federal courts where plaintiffs have failed to comply with it. In *Balas*, 711 F.3d at 406, the Court said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *See also Jones*, 551 F.3d at 300-01 (stating that "failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim").[5] Therefore, defendant's challenge on the basis of failure to exhaust administrative remedies is properly considered under Rule 12(b)(1) of the Federal Rules of Civil Procedure, authorizing dismissal for lack of subject matter jurisdiction.

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true,'" or that other facts, outside the four

---

[4] For a description of the full process, *see Balas*, 711 F.3d at 407.

[5] The requirements as to the timing of the filing of administrative charges under Title VII are subject to exceptions such as equitable tolling and equitable estoppel. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Jones*, 551 F.3d at 300 & n.2; *cf. United States v. Kwai Fun Wong*, ____ U.S. ____, 135 S. Ct. 1625, 1629 (2015) (stating that the time limitations in the Federal Tort Claims Act are not jurisdictional).

corners of the complaint, preclude the exercise of subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

The Department brings a factual challenge because it argues that plaintiff failed to exhaust, and thus this Court lacks jurisdiction. "When . . . a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009), *cert. denied*, 558 U.S. 875 (2009); *see also Warren v. Sessoms & Rogers, P.A.,* 676 F.3d 365, 371 (4th Cir. 2012); *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999).

In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Kerns*, 585 F.3d at 192; *Jadhav*, 555 F.3d at 347–48 ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may … resolve the jurisdictional facts in dispute by considering evidence … such as affidavits.") (Citation omitted). The court should grant the motion "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg, & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied,* 503 U.S. 984 (1992)). In particular, "the district court may . . . resolve the jurisdictional

facts in dispute by considering evidence . . . such as affidavits." *Jadhav*, 555 F.3d at 348. When appropriate, the court may also "hold an evidentiary hearing to determine whether the facts support the jurisdictional allegations." *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *accord Kerns*, 585 F.3d at 192.

Even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process. *See*, *e.g.*, *Jones*, 551 F.3d at 300 (quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)) ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"); *Miles*, 429 F.3d at 491. To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that agency." *Balas*, 711 F.3d at 408 (emphasis added); *see also Evans*, 80 F.3d at 962-63 ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation."). Although courts "recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). Rather, courts are constrained by the four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof . . . .'" *Balas*, 711 F.3d at 407-08 (citations omitted).

Nevertheless, in *Sydnor*, 681 F.3d at 594, the Fourth Circuit said: "[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Accord Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 669 (4th Cir. 2015).

Indeed, the Supreme Court has said that Title VII "sets up a 'remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.'" *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (citation omitted). Therefore, in the context of an Age Discrimination in Employment Act ("ADEA") claim, the Supreme Court has said: "The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes. It thus is consistent with the purposes of the [ADEA] that a charge can be a form, easy to complete, or an informal document, easy to draft." *Id.* at 403. In *Holowecki*, the Supreme Court determined that a plaintiff's "Intake Questionnaire", accompanied by a detailed affidavit as to the claim of discrimination and "a request for the agency to act", *id.* at 405, satisfied the ADEA's requirement that "a charge" be filed with the EEOC at least 60 days before a plaintiff may commence a civil action. *Id.* at 395, 404. However, the EEOC need not regard every Intake Questionnaire as a charge. *Id.* at 403-04.

The ADEA's exhaustion requirement is quite similar to that for Title VII. *Grice v. Baltimore Ctny.*, JFM-07-01701, 2008 WL 4849322, at *4 n.3 (D. Md. Nov. 5. 2008), *aff'd*, 354 F. App'x. 742 (4th Cir. 2009). Accordingly, Courts have applied *Holowecki*, 552 U.S. 389, in the context of employment discrimination claims under Title VII. *See, e.g.*, *Grice*, 2008 WL

4849322, at *4 n.3 (collecting cases); *accord Dixon v. Shasta Beverages, Inc.*, WDQ-12-0569, 2012 WL 4774808, at *3 n.9 (D. Md. Oct. 5, 2012).

Here, plaintiff completed an Intake Questionnaire (ECF 1-2 at 1-4), and checked the box that states: "I want to file a charge of discrimination. . . ." *Id.* And, akin to *Holowecki*, 552 U.S. 389, he provided the EEOC with a detailed statement of his allegations. *See* ECF 1-4 at 1. Moreover, it is apparent that the EEOC regarded plaintiff's submission as a charge, given its notice to DPSCS that a charge had been filed by plaintiff (*see* ECF 9-2 at 8) and its subsequent issuance to plaintiff of a Notice of Right to Sue. ECF 12-3. Indeed, the Notice of Right to Sue expressly advised plaintiff that he had the right to "take this matter into Federal Court. You have the right to file a lawsuit against the employer within 90 days from the date you receive the Dismissal and Notice of Rights." ECF 12-3 at 1.

DPSCS does not offer any explanation as to why the EEOC would have issued a Notice of Right to Sue in the absence of a charge. Even if, as DPSCS asserts, the EEOC charge did not provide DPSCS with a charge completed by plaintiff, this does not mean plaintiff failed to file a charge. And, defendant has not submitted any documentation from the EEOC to verify that plaintiff failed to submit a charge.

For all these reasons, I am not persuaded that plaintiff failed to exhaust. Therefore, I shall deny the Motion under Rule 12(b)(1).

### B. Failure to State a Claim/Summary Judgment

Defendant seeks to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), asserting: "Plaintiff alleges no facts at all to support his bald allegation of discrimination on the basis of natural origin." ECF 9-1 at 10. According to the Department, the factual allegations fail to

"raise an inference of discriminatory animus based upon Plaintiff's national origin. To the contrary, assuming the truth of the facts contained in the Complaint, the actions complained of were precipitated by his own admitted failure to fully identify all past employment." *Id.*

Moreover, the Department asserts: "Plaintiff has provided no direct or circumstantial evidence that the Department denied him the Correctional Officer position because of his national origin, or that it was a motivating factor in its decision." ECF 9-1 at 9. Defendant urges dismissal of the Complaint, asserting that plaintiff has failed to satisfy the minimum pleading requirements of plausibility, as articulated by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Aschroft v. Iqbal*, 556 U.S. 662 (2009). In particular, DPSCS asserts that the complaint does not must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 684; *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012).

Alternatively, the Department seeks summary judgment under Rule 56. It argues that there are no material facts in dispute and therefore it is entitled to summary judgment.

### 1. Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Twombly*, 550 U.S. at at 555-56.

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ⸻ U.S. ⸻, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Therefore, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555. Moreover, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). Put another way, in reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the

complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville,* 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010).    "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ____ U.S. ____, 132 S. Ct. 1960 (2012).

A  motion  asserting  failure  to  state  a  claim  typically  "does  not  resolve  contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Edwards*, 178 F.3d at 243 (quotation marks omitted); *see Houck*, 791 F. 3d at 484; *Tobey v. James*, 706 F.3d 379, 387 (4th Cir. 2013).  But, "if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint,'" or in other material that is the proper subject of consideration under Rule 12(b)(6), such a defense can be resolved on the basis of the facts alleged in the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)  (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*); *see Houck*, 791 F.3d at 484.

Ordinarily, in resolving a motion under Rule 12(b)(6), a court "is not to consider matters outside the pleadings . . . ." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007); *see*

*Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013), *overruled on other grounds*, as recognized in *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015). Under certain limited exceptions, however, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).[6]

Of relevance here, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it*

_____

[6] For example, without converting a motion under Rule 12(d), "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see* Fed. R. Evid. 201(b) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir.), *cert. denied,* ─── U.S. ───, 132 S. Ct. 115 (2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Accordingly, "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web." *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); *cf. Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F. App'x 223, 227 (4th Cir. 2013) (noting that the court may take judicial notice of information on a website, "so long as the web site's authenticity is not in dispute"). However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck*, 708 F.3d at 557.

*contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

As noted, defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Rule 56(a) provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[7]

---

[7] A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2015 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, [he] cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

---

to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more

discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

If the court reaches the merits of a summary judgment motion, then it must consider the standards governing such a motion. The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). In resolving a motion for summary judgment, a district court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Moreover, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

*Anderson, supra*, 477 U.S. at 249.  And, the court may not make credibility determinations on summary judgment.  *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).

## 2. Analysis

Plaintiff has not filed an affidavit under Rule 56(d).  But, he attached exhibits to his Complaint and to his Opposition.  And, defendant attached exhibits to its Motion.  To the extent the exhibits in connection with the Motion and the Opposition are relevant to the jurisdictional issue of exhaustion, I have considered them.

As indicated, in resolving a Rule 12(b)(6) motion, a court may properly consider documents "attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."  *Philips v. Pitt Co. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).  Therefore, I will consider the exhibits that plaintiff included with his suit and exhibits integral to it.  In my view, the Affidavit of Green-Holt, and the exhibits she appended to it, are not integral to the Complaint with respect to the Rule 12(b)(6) motion.  Therefore, I decline to consider them in the context of the Motion under Rule 12(b)(6).  And, I am of the view that a Rule 56 summary judgment motion is premature.

In regard to the matter of prematurity, the Fourth Circuit recently said:  "In general, summary judgment should only be granted 'after adequate time for discovery.'"  *McCray v. Maryland Dept. of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In *McCray*, the Fourth Circuit determined, *inter alia,* that the district court abused its discretion in dismissing an action before the plaintiff had an opportunity to conduct discovery in connection with a Rule 56(d) motion.  *Id.* at 483.  The *McCray* Court noted,

*id.*: "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask."

Unlike in *McCray*, Akhmedov, who is self-represented, did not file the requisite affidavit under Rule 56(d). Nonetheless, the Department relies heavily on a policy that supposedly provides that even an innocent, mistaken omission of employment on an employment application requires disqualification and may never be cured. Yet, it has not submitted that policy. Nor has plaintiff had any opportunity to explore the equal application of such a "policy" to other applicants for employment. Accordingly, I shall construe the motion under Rule 12(b)(6).

With that standard in mind, I turn to Title VII. Under Title VII, an employer may not "fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To state a prima facie claim for discrimination in hiring, the plaintiff must allege that: "(i) he belongs to a protected class, (ii) he applied and was qualified for a job for which the employer was seeking applicants, (iii) despite his qualifications, he was rejected, and (iv) after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications." *EEOC v. Sears Roebuck & Co.,* 243 F.3d 846, 851 (4th Cir. 2001). "What is critical with respect to the fourth element is that the plaintiff demonstrate he was not hired . . . 'under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* at 851 n.2 (*quoting Texas Dept. of Comty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)).

Here, plaintiff has alleged that the DPSCS failed to hire him on a discriminatory basis. Ultimately, he bears the burden of proving his claim by a preponderance of the evidence. The question here is whether he has adequately stated a claim.

In general, there are "two avenues" at trial by which a plaintiff may prove intentional employment discrimination. *Hill v. Lockheed Martin Logistics Mgmt.*, *Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). The first avenue is to offer "'direct or indirect'" evidence of discrimination, under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The second avenue available to the plaintiff is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See*, *e.g.*, *Young v. United Parcel Serv., Inc.*, ____ U.S. ____, 135 S. Ct. 1338, 1345 (2015) (construing Pregnancy Discrimination Act). The *McDonnell Douglas* scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff" to prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff in a failure-to-hire suit is generally required to show that the employer took adverse action

against an applicant who was qualified for employment, "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253.

For instance, in *McDonnell Douglas,* the prima facie case of racial discrimination in hiring was formulated as follows, 411 U.S. at 802:

> (i) that [the plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

Under the *McDonnell Douglas* approach, if a plaintiff establishes at trial, by a preponderance of the evidence, a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the defendant submits no evidence of any legitimate basis for its actions, the court or fact finder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978).

"If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. When the defendant meets its burden of production, the plaintiff must then prove, by a preponderance of evidence, "that the

proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [Plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

On the other hand, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

These two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. At the summary judgment or motion to dismiss stage, however, these approaches merely serve to inform a court's evaluation of the allegations. *See Pettis v. Nottoway Cnty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas*. . . .").

Indeed, an employment discrimination complaint need not include specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas*. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002). Rather, to the extent that review is appropriate under Rule 12(b)(6), "to survive a motion to dismiss, the complaint must 'state a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, ____ U.S.____, 132 S.Ct. 1327 (2012) (citation omitted). And, if a defendant's contentions arise as arguments for summary judgment under Rule 56, the relevance of the prima facie case under *McDonnell Douglas* at the summary judgment stage is also limited.

The Fourth Circuit has admonished district courts to "'resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of the ultimate question of discrimination *vel non*.'" *Merritt*, 601 F.3d at 295 (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)) (alterations in *Merritt*, internal quotation marks omitted). The Court has observed that, "[n]otwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of 'the ultimate question of discrimination *vel non*,'" and that, "[b]y the time of appeal especially, the issue boils down to whether the plaintiff has presented a triable question of intentional discrimination." *Merritt,* 601 F.3d at 294-95 (citation omitted).[8]

---

[8] On several occasions where the employer proffered evidence of a legitimate reason for its adverse action in its motion for summary judgment, the Fourth Circuit has assumed, without deciding, that the plaintiff established a prima facie case. *See*, *e.g.*, *Holland v. Washington*

In this case, plaintiff maintains that, to the extent his employment application did not include the jobs he held in Russia and the part-time job he had at Sam's Club for about one month, it was the result of a misunderstanding, which he promptly rectified within one day of his interview. The Department maintains, however, that its "policy" precludes any errors or omissions in connection with completion of the application. As noted, it has not submitted any documentation of such a policy. Rather, it has submitted the Affidavit of Ms. Green-Holt (ECF 9-2), who baldly asserts that "the Department uniformly disqualifies applicants who fail to disclose complete prior employment history in the initial interview application packet." ECF 9-2 at 2. For this assertion, she relies on the Investigative Report, produced in response to Mr. Akhmedov's discrimination complaint. *See* ECF 9-2 at 4-7.

The Investigative Report was prepared by investigator Paris Lee, who interviewed Bonnie Ridenour, Human Resource Officer of the Department, and Holly Winchester, Manager of Centralized Hiring. Ridenour reported that plaintiff "did not write down all jobs held since Complainant was 18," and this resulted in his "automatic disqualification. . . ." *Id.* at 5. Winchester related "strict . . . hiring guidelines" at DPSCS that require completion of the employment packet and disqualification for omissions. *Id.* at 6. The Investigative Report does not reflect the application of such a policy to other prospective employees under circumstances similar to those alleged here.

---

*Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007), *cert. denied*, 552 U.S. 1102 (2008); *Hux v. City of Newport News*, 451 F.3d 311, 314 (4th Cir. 2006); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319-20 (4th Cir. 2005); *cert. denied*, 546 U.S. 1091 (2006); *Rowe v. Marley Co.*, 233 F.3d 825, 829 (4th Cir. 2000); *see also Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 736-37 (D. Md. 2009); *Spriggs v. Pub. Serv. Comm'n*, 197 F. Supp. 2d 388, 394 (D. Md. 2002).

In any event, these submissions are not integral to the complaint and may not be considered under Rule 12(b)(6). As plaintiff has stated a claim for employment discrimination, I will DENY the Motion. Defendant may refile a motion for summary judgment after the parties have had an opportunity to engage in discovery.

An Order follows.


Date: November 6, 2015                              _____/s/_____
                                                    Ellen L. Hollander
                                                    United States District Judge